**LIPSCOMB et al. v. LOFLAND et al.**

**No. 5127.**

Court of Civil Appeals of Texas. Amarillo.

June 10, 1940.

Rehearing Denied July 1, 1940.

A. T. Cole, of Clarendon, and J. O. Fitzjarrald, of Memphis, for plaintiffs in error.

Gibson & Sutton, of Amarillo, for defendants in error.

STOKES, Justice.

We handed down an opinion in this case on March 11, 1940, in which the case was reversed and remanded. Motions for rehearing have been filed by all parties and a reconsideration of the entire record has convinced us that we erred in reversing the judgment. The original opinion is, therefore, withdrawn and the following opinion substituted therefor:

Plaintiffs in error, Audrey Lofland Lipscomb, joined by her husband, Lloyd Lipscomb, and joined also by C. W. Ryan as guardian of the estate of Billie Marylin Lofland, a minor, filed this suit in the district court against Maye Lofland, the original guardian of the estates of Audrey Lofland Lipscomb and Billie Marylin Lofland, and against Fidelity & Deposit Company of Maryland, surety on the general guardianship bond and two special real estate sales bonds of Maye Lofland. The purpose of the suit was to recover certain amounts claimed as being due the former wards by reason of the alleged waste, devastation and conversion of property coming into the hands of the guardian and belonging to the wards. It was alleged in the petition that certain proceedings in the probate court of Hall County, especially the orders entered by it in the guardianship pertaining to the disposition of the proceeds of the sale of certain real estate and personal property and money belonging to the wards, were void for various reasons set out in the petition and the orders entered by that court directing and approving the disposition and application of such proceeds and money, and approving the annual account of the guardian, were void because of the want of authority in the probate court to enter them under the circumstances alleged to have existed in the guardianship at the times they were entered.

The case was submitted to the court without the intervention of a jury and resulted in a judgment in favor of the defendants, from which the plaintiffs have sued out a writ of error.

Defendants in error contend that the suit of plaintiffs in error constitutes a collateral attack upon the various orders and judgments entered by the probate court in the guardianship proceedings which cannot be maintained under the allegations and proof. While the record contains a large number of assignments of error and propositions of law, the controlling question in the case is presented by these contentions of the parties.

John Lofland, the husband of the guardian and the natural father of Audrey Lofland, died intestate on the 22nd of April, 1929, leaving his wife, Maye Lofland, and a daughter, Audrey, who was then a minor. John Lofland and his wife had adopted plaintiff in error, Billie Marylin Lofland, and she was living with the family at the time of his death. During his lifetime John Lofland maintained a policy of insurance upon his life in the sum of $10,000 in which his wife, Maye Lofland, and his natural daughter, Audrey, were the beneficiaries. After his death, Maye Lofland made application and qualified as guardian of the estates of the two children and collected $8,400 from the life insurance company, being the amount due thereon after deducting some loans which had been advanced to John Lofland during his lifetime. Of the amount so collected, one-half, or $4,200, was appropriated by the guardian as her own property and the other half inventoried in the guardianship as the property of her ward, Audrey Lofland. Immediately after collecting the proceeds of the life insurance policy, Mrs. Lofland, out of her own funds, paid various and sundry accounts owing by her husband at the time of his death, amounting in the aggregate to $4,199.84. She then made application to the probate court to be reimbursed this amount out of the $4,200 belonging to the estate of Audrey Lofland, alleging that the accounts which she had paid constituted charges against the entire estate of her deceased husband and that she was entitled to be subrogated to the rights of the creditors whom she had paid. The county judge heard the application, entered an order granting the same, and under it the guardian appropriated as a reimbursement to herself the sum of $4,199.84, which constituted all of the proceeds of the life insurance policy which belonged to Audrey Lofland except 16¢.

The record shows that John Lofland, at the time of his death, owned 960 acres of land which was his separate property, and also a homestead in the town of Memphis which was the community property of himself and his surviving wife. The land was encumbered for a large amount in the nature of a loan and the guardian made application to sell 760 acres of it. The application was granted by the court, the sale consummated, reported and confirmed by order duly entered in the guardianship. By this transaction, 200 acres of the land was saved to the estates of the minors, free and clear of all encumbrance. The record further shows that the homestead was sold under application and order of the court for the sum of $3,500, one-half of which belonged to the minors but was not included in the inventory.

On September 9, 1930, the guardian filed her first annual account in which it is shown that in her administration of Audrey's estate she had collected a total of $11,583.20 and had disbursed $9,257.80. The report included one-half of the proceeds of the sale of the homestead. She claimed commissions of $993.05 and reported a loss on a cattle transaction of $529.50 which exhausted the entire estate inventoried or reported to the court as being in her hands, except the 200 acres of land and left the estate indebted to her in the sum of $197.15. In this report she also made an exhibit of her administration of Billie Marylin's estate. The report was approved on the 6th of October, 1930, by order duly entered in the guardianship by the county judge.

On the 17th of February, 1932, Maye Lofland filed an application to be permitted to resign and in connection with it, before it was acted upon by the court, she filed a purported final report. On the 6th of June, 1932, her resignation was accepted by an order duly entered by the court in which it was ordered that the final report, together with the order, be spread upon the minutes of the court.

On August 11, 1932, A. T. Cole, as next friend of the minors, filed in the county court of Hall County a petition for a bill of review, in which he sought to have set aside and held for naught all of the orders approving any expenditures by the guardian out of the funds of the guardianship, and prayed that the orders and proceedings be reconsidered and reviewed by the court, and that the guardian be ordered to return the sum of $12,000 which he alleged she had wrongfully expended as guardian. The guardian filed her answer and the petition for bill of review was heard by the county court on the 1st of February, 1933. The judgment entered by the court on that day shows that the cause came on to be considered and the court was of the opinion that the law was against it. The court found that the former county judge had not committed errors in any of the orders entered in the guardianship as set out in the bill and the relief prayed for was, therefore, denied. Exception was taken to the judgment and notice of appeal to the district court was entered but the appeal was not perfected nor any further proceeding had upon the bill of review.

Plaintiffs in error, in their assignments of error, propositions of law and brief, raise a large number of questions concerning specific actions of the probate court pertaining to these and other items received and disposed of through orders of the court by the guardian, but the items and orders we have mentioned will be sufficient, we think, to demonstrate the nature of the questions raised. The question here to be decided is whether or not the manner in which the items of property belonging to the wards were disposed of and the orders of the court in reference thereto may be attacked in a proceeding of the nature revealed by the record in this case.

■ If the orders entered by the probate court were within its jurisdiction and were such as that court had power to make, they cannot be attacked in a collateral proceeding no matter how erroneous they may be. The probate court, when acting within the powers granted to it by the constitution and statutes, is a court of general jurisdiction and it is well established by the decisions that, when so acting, judgments entered by it are equally as immune from collateral attack as are those of any other court of our system of jurisprudence. Dallas Joint Stock Land Bank v. Forsyth, 130 Tex. 563, 109 S.W.2d 1046; Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325; Murchison v. White, 54 Tex. 78, 83; Jones v. Wynne, 133 Tex. 436, 129 S.W.2d 279. The county court is given general jurisdiction in probate matters by Sec. 16, Art. 5 of the Constitution, Vernon's Ann.St., and Art. 4102, R.C.S. 1925, Vernon's Ann.Civ. St. art. 4102, provides that the county court shall appoint guardians of minors, settle accounts of guardians, and transact all business appertaining to the estates of minors.

■ A collateral attack upon a judgment, as distinguished from a direct attack, is an effort to avoid the binding force of the judgment, such attempt being made in a proceeding instituted for some purpose other than those purposes for which a judgment may be directly attacked. Its nature is revealed, for instance, when it is shown that it is an action for debt on a judgment and the defendant attempts to adjudicate the fact of the indebtedness or in a suit of trespass to try title, where one of the links in a chain of title consists of a judgment and the adverse party attempts to avoid its effect. A direct attack is said to be an attempt to amend, correct, reform, vacate or enjoin the execution of a judgment, such attempt being initiated for that

specific purpose, such as a motion for rehearing, an appeal, writ of error, bill of review, or an injunction to restrain its execution. Crawford v. McDonald, supra. The rule is well established that a judgment may be avoided in a collateral proceeding if the judgment is void. If, however, the matter is within the court's jurisdiction and the grounds relied upon to avoid it pertain merely to matters of procedure, it then becomes a question of whether or not error was committed and can be reached only by a direct attack.

■ The record in this case shows that the guardian made application to the probate court to sell the 760 acres of land. She accompanied her application with an exhibit of the condition of the estate. The application was presented to the court and an order entered directing the guardian to make the sale. After the sale was made and reported to the court a real estate sales bond was executed and filed as provided by law, and an order entered by the court confirming the sale. The same procedure was had with reference to the sale of the homestead property in the town of Memphis and, although some errors may have been committed in the manner in which the properties were ordered to be sold and in the procedure through which the sales were made and in the orders confirming them, the proceedings were undoubtedly those of which the probate court had jurisdiction and any errors that may have been committed were merely errors of procedure and did not render void the judgments and orders of the court. The probate court undoubtedly had power to enter orders of the kind here being discussed. It had the right of decision in each and all of these matters and its judgments and orders were not void even though it may be conceded some of them were erroneous.

■ As to the orders entered by the court authorizing the guardian to reimburse herself for the expenditure out of her separate funds of $4,199.84, in our opinion the same conclusion must be drawn. The probate court unquestionably had jurisdiction of the $4,200 collected by the guardian for her ward upon the life insurance policy of the ward's deceased father. The money had been collected from the life insurance company under orders of the probate court. The guardian had qualified as such and given a general bond in the form provided by the statute. The guardian alleged in the application that she was entitled to be subrogated to the rights of the creditors of the estate of John Lofland, deceased, and it was sworn to by her. While it is true the obligations paid by her were those of the deceased father of her ward, it is also true that the ward inherited from her father a three-fourths interest in 960 acres of land which was encumbered by a large indebtedness. It was alleged that the holders of the loan against the land were threatening foreclosure proceedings and it could have been the opinion of the county judge that the interest of the minor in the land could best be preserved by discharging the general debts of her deceased father which also constituted claims against his estate. Whether the probate court took that view or some other however, it had the authority and power to pass upon the application. That being true the order granting it must stand against collateral attack because the only means by which it could be destroyed would be to show that the probate court committed error in the action taken when the application was passed upon and granted. There is no doubt that the allegations of the guardian could have been supported by proof which would have at least presented an issue as to whether or not it was to the best interest of the minor and her estate to discharge the general indebtedness of the estate of her deceased father in order to relieve the property inherited by the minor of the claims against his entire estate. That being true and the issue having been adjudicated in the probate court, the district court had no power in this case to go behind the judgment of the probate court and again litigate that which was settled when the order was entered by the probate court.

■ In making sale of the homestead property in Memphis the record shows that procedure was followed in the probate court substantially the same as was followed in regard to the sale of the land, and we find nothing in the record which would warrant us in holding that the probate court was without jurisdiction to entertain and grant the orders applied for by the guardian. If in those matters procedure was followed which failed strictly to observe that which is prescribed by the statute, the most that can be said is that the probate court committed error and plaintiffs in errors' remedy was by appeal or some form of direct attack. Not having in that respect followed

the procedure laid down by the statute, they cannot now be heard to say that error was committed and the judgments entered should be nullified and held for naught. In saying this we are ignoring the fact that a bill of review was instituted and prosecuted to final judgment from which no appeal was perfected. We do not deem it necessary to discuss that proceeding.

What we have said pertains to those items of property which were included in the inventory and appraisement or over which the court assumed to exercise authority and jurisdiction. In our opinion, as to them, the suit filed in the district court was a collateral attack and plaintiffs in error were not entitled to recover thereon. Reeves v. Fuqua, Tex.Civ.App., 184 S.W. 682; Miller v. Miller, Tex.Civ. App., 53 S.W. 362; Clayton v. Hurt, 88 Tex. 595, 32 S.W. 876.

The record reveals that at the time of John Lofland's death, he and his wife, Maye Lofland, owned a quantity of household and kitchen furniture, and also an automobile, all of which was community property. After his death, Mrs. Lofland and her children, Audrey and Billie Marylin, who were then very young, continued to occupy the homestead and their use of the household furniture and automobile continued in the same manner as it had been used by Mrs. Lofland and her husband during his lifetime. None of this property was included in the inventory of the guardianship. After Mrs. Lofland, under orders of the court, sold the homestead, she purchased another home and some additional furniture and, with the children, moved into the new residence, taking the old furniture with her, all of which she continued to use in the home. After living there for some time the new house and all of the furniture were destroyed by fire. The record shows that Mrs. Lofland also purchased a new automobile and exchanged the old one as part of the purchase price. Plaintiffs in error contend that the furniture and automobile were converted, devastated and wasted by Mrs. Lofland and include in their suit a claim for the value of their interest in these items.

The household furniture and automobile being community property of John Lofland and his surviving wife, the children inherited from him his interest therein and thereafter it belonged to them and their mother as tenants in common. Mrs. Lofland continued to use the property for the benefit of the children, as well as herself. The record reveals no demand either by the children or their subsequent guardian for possession of their interest or portion of the household articles and automobile, and the law is well established in this state that unless the right of a cotenant to the equal use and enjoyment of such property is denied by the other, or he is in some manner ousted or deprived of its use, the tenant in possession is not liable to him for his use thereof. They are both entitled to possession and neither is guilty of a conversion thereof or liable to the other for its reasonable use. The possession of one is the possession of all and neither holds adversely to the other. Stewart v. Marshburn, Tex.Civ.App., 240 S.W. 331; Davidson v. Green, 27 Tex.Civ. App. 394, 65 S.W. 1110, 1111; Morris v. Morris, 47 Tex.Civ.App. 244, 105 S.W. 242; Markum v. Markum, Tex.Civ.App., 273 S. W. 296; Roberts v. Roberts, Tex.Civ.App., 278 S.W. 937; Arrington v. McDaniel, Tex.Com.App., 14 S.W.2d 1009.

The record indicates that Mrs. Lofland procured insurance on the new furniture purchased by her and it is not shown that the old furniture was covered by insurance. The proceeds of the insurance policy were paid to those from whom she purchased the new furniture in discharge of an indebtedness for a portion of the purchase price. It is not contended that she owed to plaintiffs in error the duty of maintaining insurance on the old furniture and in the absence of a showing to the contrary, which the record does not contain, it will be assumed that the new automobile was used by her for the benefit of herself and plaintiffs in error in the same manner as the old one had been. We find nothing in this which would give rise to a suit on behalf of the children against their mother for waste or conversion and the contentions of plaintiffs in error in this respect are overruled.

Upon a careful examination of the motions for rehearing and a reconsideration of the assignments of error and propositions presented by the briefs, we are of the opinion that no reversible error is shown. The motion for rehearing of plaintiffs in error will be overruled and the motion of defendant in error, Fidelity & Deposit Company of Maryland, will be granted, and the judgment of the court below in all respects affirmed.