### McLENDON et al. v. COMER et al.
### No. 6240.

Court of Civil Appeals of Texas. Texarkana.
Feb. 11, 1947.

Rehearing Denied Feb. 20, 1947.

Norman, Stone & Norman, of Jacksonville, and Shook & Shook, of Dallas, for appellants.

Randall & Gray, John N. Harris, Jr., and Worsham, Burrow & Worsham, all of Dallas, and Holloway, Hudson & Shirley, of Fort Worth, for appellees.

HARVEY, Justice.

H. P. McLendon and others, the heirs of Homer Prior, deceased, brought suit in trespass to try title against Mrs. Gertrude Comer, and others, to recover the mineral estate under 335.28 acres of land out of the James F. Johns H. R. Survey in Panola County, Texas. Upon a jury verdict, the court entered judgment for the defendants, after having overruled plaintiffs' motion for an instructed verdict at the conclusion of the evidence, as well as their motion for judgment non obstante veredicto, and such plaintiffs have perfected this appeal.

With an omission of as many non-controlling details as possible, in brief outline the record herein discloses that Homer Prior was adjudged a person of unsound mind by the County Court of Panola County in 1899. After successive guardians had been appointed, in 1906 W. B. Prior was appointed guardian and served until the estate was closed in 1929. Numerous transactions are shown by the reports filed by the guardians in administering the estate, such as applications to lend money, to buy and sell land, to purchase notes, and so on, with orders of the court indicating that such applications were granted. One of these matters was a vendor's lien foreclosure suit by the guardian in 1916 in the district court in which judgment was entered foreclosing a lien in the sum of $1200 against a 172.3 acre tract, which on a survey of it being made was shown to contain 335.28 acres. After judgment was rendered, the defendants, W. A. Taylor and wife, the common source of title, deeded the land, which is the tract now in controversy, to W. B. Prior, guardian of the estate of Homer Prior, lunatic, in cancellation of the judgment. On October 7, 1916, W. B. Prior, guardian, deeded this tract of land to J. R. Comer for a cash consideration of $1000, and the execution and delivery of two notes in the sum of $250 each, due October 7, 1917 and 1918, each, respectively. These notes were released by the guardian as of November 11, 1918, and his report showed the collection of interest thereon as of October 5, 1918. The evidence shows that three separate probate suits were filed under the same number as the Prior Guardianship, No. 1092½; that many irregularities existed with references to the filing, docketing, indexing, and recording of instruments in the various probate proceedings; and that in addition a large number of the original papers in such proceedings had been lost or misplaced, and were missing. J. R. Comer and wife, Mrs. Gertrude Comer, moved on the land bought from W. B. Prior, guardian, sometime during the last week of December 1916, and lived there several years, then rented to a tenant who was in charge of the place on May 17, 1926, when the Comers sold the surface of the entire James F. Johns Survey, described as containing 640 acres, more or less, which included the land herein involved, to Frost Lumber Industries, Inc., and reserved the minerals under said tract. The tenant on the land at the time continued to occupy it as the tenant of the Frost Lumber Industries, Inc., until 1940, and thereafter the land was occupied by other tenants.

On February 17, 1930, J. R. Comer et al. conveyed to J. G. Woolworth all the minerals under the East half of the James F. Johns Survey and he in turn executed a lease to H. B. Pressley; various defendants herein claim under conveyances by J. G. Woolworth. Also, J. R. Comer et al. leased the West half of the Johns Survey to H. B. Pressley, which was assigned by him to the Sun Oil Company, as well as the lease to the East half held by him. On July 16, 1926, Frost Lumber Industries, Inc., filed a trespass to try title suit against Homer Prior and W. B. Prior for the entire Johns Survey, and thereafter, on September 28, 1926, in that suit, No. A–646, judgment was entered in its favor for the title and possession of the land sued for, with a provision that the plaintiff take nothing as to the defendant, W. B. Prior. On December 11, 1929, W. B. Prior gave Frost Lumber Industries, Inc., a quitclaim deed to the James F. Johns Survey. Thereafter, on August 4, 1945, H. P. McLendon et al. filed suit against Frost Lumber Industries,

Inc., in cause No. A–3319, for the 335.28 acre tract now in controversy, which filed a disclaimer as to the minerals under the tract sued for, and on September 4, 1945, judgment was rendered that the plaintiffs take nothing as to the surface of the land sued for, but that they recover the minerals thereunder. On October 23, 1945, H. P. McLendon, and others, filed the instant suit against Mrs. Gertrude Comer, et al., in which they contend that the guardian's deed from W. B. Prior to J. R. Comer is void by reason of noncompliance with certain statutory requirements in the sale of the land involved.

■ The points relied upon by appellants for a reversal, or a reversal and rendition of the judgment of the trial court, in the main revolve around the claimed invalidity of the guardian's deed to J. R. Comer, dated October 7, 1916. The evidence discloses that in probate cause No. 1092½, styled Estate of Homer Prior, a non compos mentis, there is a docket entry as follows:

"November 8, 1916. Application of guardian granted and sale of land described in application approved and confirmed in accordance with recitals in said application."

The jury upon questions asked them found that W. B. Prior, guardian, in cause No. 1092½ made application to the probate court of Panola County for authority to sell the land herein involved; that such application has been lost; that the county judge of Panola County made an order confirming the sale of the land by the guardian to J. R. Comer; and that the docket notation above recited refers to the transaction between W. B. Prior, guardian, and Comer. In our opinion, the docket entry is a judgment of the court, and upon collateral attack, as in this case, it cannot be shown that antecedent procedural requirements were not observed. The presumption prevails in the absence of a showing to the contrary that all applications and orders prescribed by statute were made in proper sequence. Bouldin v. Miller, 87 Tex. 359, 28 S.W. 940; Hannon v. Henson, Tex.Com.App., 15 S.W.2d 579; Lipscomb v. Lofland, Tex.Civ.App., 141 S.W.

2d 983. In finding that the docket entry in question referred to the Comer deal, the jury had before it the circumstances of the report by the guardian of the collection of interest on the Comer notes and the approval of such report. As against the objection of appellants that there was no description of the land embraced in the docket entry of the order of confirmation, the deed itself may be looked to for the purpose of supplying the deficiency. Worthy of note is the fact that the order had been of record 29 years at the time it was assailed and that all the parties to the proceedings were dead. The policy of the courts is to give effect, wherever possible, to our probate court proceedings. It is well known that due in part to the lack of legal training of the probate court officials, especially in more remote times, the court proceedings were not as carefully entered, in detail, with exactitude and in strict conformity with rules of procedure as might have been. Consequently, more especially after the lapse of long periods of time, when persons having information as to the transactions in question are dead, and many of the records have become lost or destroyed, liberal presumptions are indulged in by courts with a view of validating such proceedings, in cases of attacks made upon them collaterally. Guilford v. Love, 49 Tex. 715, 719; Dancy v. Stricklinge, 15 Tex. 557, 65 Am.Dec. 179; Ferguson v. Templeton, Tex.Civ.App., 32 S.W. 148.

■ The defendants below specially pleaded the five, ten and twenty-five year statutes of limitation. A stipulation was entered into between the parties to the suit to the effect that J. R. Comer and wife, and their tenant, from about the 1st of January, 1917, lived upon, held, used, adversely claimed and cultivated the land in controversy as their own until the 1st day of January, 1926, from which time Frost Lumber Industries, Inc., their vendee of the surface estate, continued such use, claim and enjoyment of the premises by their tenant until 1940; that no oil or other minerals were produced from this land during such period of occupancy and claim. The Comers, at the time of the sale to Frost Lumber Industries, Inc., lacked about six months of having perfected a limitation title. Appel-

lants urge that since no issue of limitation was submitted to the jury, nor any such issues requested, that appellees (defendants below) waived this defense. We do not think this contention is sound. Had there been conflict in the evidence, and no agreement filed with respect to the facts, the position taken by appellants would be tenable. However, where the facts are undisputed, it becomes a question of law for the court to determine as to whether limitation title has been ripened in the defendants, and is not an issue for the jury's determination.

The identical question presented by the special limitation plea and the uncontroverted evidence thereon, is whether or not upon a severance of the surface and mineral estates made by one in possession of the entire fee simple estate who sells the surface estate but reserves all of the minerals, the continued use and claim of the surface by his grantee inures to the benefit of such grantor who retains the minerals. We are not apprised of any precedent in which the precise factual situation is the same as in the instant case. There are a number of decisions, however, that are more or less analogous, and in which the logic and reasoning might be applied to the facts now under consideration.

In the case of Clements v. Texas Co., Tex.Civ.App., 273 S.W. 993, 1005, the court uses this language:

"But a severance by one in possession, who has not yet matured a title, does not abandon, limit, or qualify his possession for the purpose of ripening a title against the true owner out of possession; and that, as against such disseized owner, the continued possession of a trespasser after severance, as before, is adverse, and that such possession continued by either the trespasser or the third person to whom he severs will mature a title by limitation to the entire tract as against such disseized owner." Citing authorities.

By way of obiter dictum, the court in the case quoted expresses the opinion that a grantee of a mineral estate may tack his possession of the minerals onto the previous possession of his grantor. In sound reason and principle, if "the continued possession of a trespasser after severance, as before, is adverse, and that such possession continued by either the trespasser or the third person to whom he severs will mature a title by limitation to the entire tract as against such disseized owner," then the possession of the grantee of the surface estate continued by him after severance will inure to the benefit of his grantor who reserves the mineral estate and will ripen a limitation title in such grantor. They are in privity of estate; they have a unity of interest as against the disseized owner in perfecting their respective titles by limitation. Under the doctrine of the case of Wallace v. Hoyt, Tex.Civ.App., 225 S.W. 425, and other precedents in this state, which lay down the well-recognized and logically sound principle that after severance of the mineral and surface estates, the possession of one will not ripen into a limitation title to the other, by reason of their privity of estate, Frost Lumber Industries, Inc., on account of its adverse possession of the surface estate could not perfect a limitation title against its grantor who retained the mineral estate. However, it is our opinion that under facts such as those now under consideration the possession of the surface, continued by Frost Lumber Industries, Inc., after its purchase of the surface estate has the effect of maturing a limitation title to the retained mineral estate in its grantor, J. R. Comer. Too, in this case, the legal title to the land in question having been vested in W. B. Prior, guardian of Homer Prior, a lunatic, as part of the latter's estate, when limitation had run as against the guardian it was effective also as against his ward. Broussard Trust v. Perryman, Tex.Civ.App., 134 S.W.2d 308.

In view of our conclusions with reference to the points above discussed it is unnecessary to consider the validity of the judgment entered in cause No. A–546, Frost Lumber Industries, Inc., v. Prior et al., which was attacked by reason of alleged defective service, and the effects of such judgment, if not void, as being res judicata of the sufficiency of the probate proceedings through which the guardian's deed was made to J. R. Comer. Also, it is unimportant as to what was the effect of

the judgment in favor of H. P. McLendon et al., in case No. A–3319 wherein Frost Lumber Industries, Inc., was defendant, and in which suit the plaintiffs were awarded title to the mineral estate in the land in dispute.

The trial court properly having entered judgment for the defendants for the title and possession of the mineral interest in controversy, the judgment is affirmed.