AMERICAN PETROFINA, INC. *v.* WARREN, et al.

No. 42733          October 14, 1963          156 So. 2d 729

*Wells, Thomas & Wells,* Jackson, for appellants.

554

*McFarland & McFarland,* Bay Springs, for appellees.

RODGERS, J.

This is an action originating in the Chancery Court of Simpson County on October 23, 1957, for the purpose of cancelling seven conveyances appearing on the land records of Simpson County, and which are alleged to be clouds upon the title of appellees to certain real property. The chancery court entered a decree sustaining the claim of the complainant, cancelling all of the mineral deeds in dispute. The cross bill filed by appellants here was dismissed with prejudice, and from this adverse decree, appellants have appealed to this Court.

The facts and circumstances under which this dispute arose came about in the following manner: It appears from the deeds and conveyances on file in the Chancery Clerk's Office in Simpson County that the appellees are the owners of the certain 42½ acre-tract of land located in Simpson County, Mississippi. The appellants admit the validity of appellees deraignment of title from the U. S. Government through mesne conveyances to a common source of title in Ottis Bynum. The land records revealed that Ottis Bynum and his wife Beadie gave a trust deed to Simpson County on the land here involved December 8, 1937. On March 6, 1940, Simpson County, by an order of the board of supervisors, released the oil and mineral rights on this property as conveyed in the mineral lease from Ottis Bynum to Magnolia Petroleum Company, which lease expired by

its own terms. On February 8, 1940, the Magnolia Petroleum Company leased the property for the exploration of oil, gas and minerals. On November 9, 1940, an order was entered by the board of supervisors on its minutes directing .that R. C. Russell be appointed substituted trustee in the place of W. M. Lofton, and directing that the above-mentioned Bynum trust deed to Simpson County be foreclosed. The evidence further reveals that this property was advertised for sale in the Simpson County News, a local newspaper, to be sold on the 13th of December 1940. On December 4, 1940, an order was entered on the Minutes of the Board of Supervisors directing T. E. Berry, a Member of the Board, to appear at the sale and bid on the land. At the time the instant suit was filed, there was no trustee's deed of record by which the title was conveyed to a purchaser at the above sale. On October 7, 1942, the board of supervisors ordered a sale of the land here in question to Ray Dukes, and on the same date, Hiram S. Tullos, President of the Board of Supervisors of Simpson County, conveyed the land to Ray Dukes. Ray Dukes and his wife gave a purchase money trust deed dated October 7, 1942, to Simpson County on the property here involved.

During the time Ray Dukes possessed the property, he gave three mineral deeds, as follows: On November 1, 1943, he made a deed to W. L. Wood to one-half of all minerals; on January 6, 1944, he made another deed to W. L. Wood for one-fourth of all of the minerals; on August 10, 1944, he and his wife gave a deed to W. C. Mangum conveying a one-eighth interest in the minerals on this land. Appellees in the instant case deny the validity of these deeds. The first two mineral deeds passed through various grantees until they became the property of appellants, American Petrofina, Inc. and Stella Smith, respectively, and are among those sought. to be cancelled.. W. C. Mangum, although summoned, did

not appear and file an answer and does not claim under the third mineral deed above set out. The other defendants named in the original bill disclaimed any interest or did not file pleading.

The record shows that on May 12, 1945, Ray Dukes and wife conveyed the land to Claude N. Cook, who in turn gave a trust deed on the land to Ray Dukes. The deed from Dukes to Cook was corrected by another deed dated April 9, 1949.

On December 12, 1949, the board of supervisors attempted to cancel the original trust deed from Ottis Bynum and at this time Ottis Bynum gave Claude N. Cook a quitclaim deed to the land. The record further reveals that on January 3, 1950, Claude N. Cook and wife gave the Federal Land Bank of New Orleans a trust deed upon the lands, less an undivided seven-eights interest in the oil, minerals and gas under this land.

On January 15, 1953, Claude N. Cook and his wife, Erma, gave a deed to Earl Warren and wife, Jessie Ruth, conveying the land here in question, less five acres.

Finally, after this suit was instituted, R. C. Russell (substituted trustee) made a trustee's deed to Simpson County conveying the land described in the original trustee's deed from Ottis Bynum to Simpson County on November 21, 1957. It contains the following language: ''This conveyance is made by me as trustee only and without warranty of any kind whatsoever and is made effective as of said date of sale, December 13, 1940.''

In addition to the foregoing record of title, appellants offered evidence to show that R. C. Russell actually made the sale of the property to the county and made a trustee's deed and put it on a table in the chancery clerk's office. Oral evidence was offered to show that the board of supervisors paid R. C. Russell for foreclosing the Bynum trust deed. The tax records were introduced and revealed that for the years 1938-1939 the property was assessed to Ottis Bynum, but was assessed

to Simpson County for the years 1940-1941 and 1942-1943. A letter was introduced in evidence from W. V. May, County Superintendent of Education, addressed to the board of supervisors, dated January 8, 1941, requesting the board of supervisors to pay R. C. Russell an attorney's fee for foreclosing the Bynum deed of trust. Several witnesses testified that each of the grantees in the deeds, after the foreclosure, went upon the described lands and took possession of the surface as grantee in the land deeds on the date of their respective deeds.

It is the contention of appellees that the various conveyances beginning with the deed from Simpson County to Ray Dukes, dated October 7, 1949, and before the time the quitclaim deed was given from Ottis Bynum to Claude N. Cook are void and of no effect, because the record title remained in Ottis Bynum from the time he purchased the land until he disposed of it by quitclaim deed to Claude Cook in December 1949.

We are of the opinion, however, that the foregoing thesis is incorrect and that the learned chancellor erroneously cancelled the oil, gas and mineral deeds given by Ray Dukes and wife, Evelyn, to W. L. Wood under dates of November 1, 1943, and January 6, 1944, for the reasons hereafter expressed.

I

The appellees point out that they became the holder of a warranty deed and went into possession of the land as purchasers for value before the substituted trustee's deed was executed and recorded; and allege that the "* * * first appearance we see of a purported substituted trustee's deed is the one dated November 21, 1957, and filed on November 22, 1957. All of the rights of the appellees had intervened in the seventeen years that this instrument was not recorded." Appellees agree, however, that "If the deed of trust from

Ottis Bynum to Simpson County had been foreclosed on December 13, 1940, they would have had a title * * *" It is the contention of appellees therefore that the substituted trustee's deed from R. C. Russell, filed after this suit was instituted, was not valid as against the prior recorded deed from Claude Cook to the appellees.

In the case of Gardner v. State, 235 Miss. 119, 108 So. 2d 592, this Court determined that the failure of a purchaser at a foreclosure to file his deed for record until ten years and four months after the sale did not effect the validity of the foreclosure so long as the rights of intervening third parties were not involved.

The appellees did not show, or offer to prove, that the foreclosure proceedings under the trust deed to Simpson County were in anywise invalid, but base their claim of title upon the theory that the deed of trust from Bynum to Simpson County was not foreclosed and that the quitclaim deed from Bynum to Cook served to vest title in Claude Cook, and thereafter by deed to them. This Court held in the case of Pruitt v. Dean, 198 Miss. 71, 21 So. 2d 300 (Suggestion of Error, 21 So. 2d 916), that a purchaser at a foreclosure sale was entitled to receive at any time a corrected trustee's deed properly describing the land sold. The Court also said that the mortgagors could not urge that the trustee's deed described lands in which they had no interest.

The land records and other evidence in this case overwhelmingly establish the fact that a sale was made by the substituted trustee of the land described in the mortgage after proper notice, on the 13th day of December 1940. It further establishes that Simpson County became the purchaser of the land at the foreclosure sale, and that a deed was prepared by the substituted trustee. These facts are borne out, not only by the testimony of R. C. Russell and W. V. May, but by evidence of the newspaper advertisement, the tax records, and the minutes of the board of supervisors. Finally, the

quitclaim deed from Otis Bynum to Cook shows that the lands were no part of the grantor Bynum's homestead, that he had made default in the payment on his trust deed for the purchase of the land from Simpson County, and that the board of supervisors had ordered the trust deed foreclosed. Moreover, the testimony in this case reveals that Claude N. Cook did not pay Ottis Bynum anything for the quitclaim deed dated December —————— 1949.

The land records in this case contain abundant constructive notice, which, if followed to the minutes of the board of supervisors' assessment roll and other sources indicated in the deeds themselves, a purchaser would have discovered as a matter of fact that the land had been foreclosed and sold to Simpson County, and that Ottis Bynum had no real interest in the lands at the time he attempted to quitclaim said lands to Claude N. Cook without consideration.

We are therefore of the opinion that appellees were not purchasers for value without notice of the claim of Simpson County, and of appellant's right in the land as subsequent grantees and mineral owners, for the reasons above set out. See Burkett v. Peoples Bank of Biloxi, 225 Miss. 291, 83 So. 2d 185; Connecticut General Life Ins. Co. v. Lombard, 185 So. 260, 189 So. 818 (Miss.).

## II

■■ ■ We do not believe there is any merit in the contention of the appellees that, because the deed of trust from Ottis Bynum to Simpson County was cancelled by order of the board of supervisors long after it was foreclosed by the substituted trustee, the substituted trustee's deed was invalid. We do not believe this alleged cancellation shows the trust deed was not foreclosed. The board of supervisors had no right to cancel a trustee's deed long after the property had

passed out of its hands by deed to Ray Dukes. Further — the record does not disclose any consideration for the cancellation of the trust deed. The board of supervisors had no authority to cancel the trust deed securing a debt to the county, except upon payment of the indebtedness due, under the facts in this case.

## III

After a careful consideration of the entire record in this case, we have reached the conclusion that Simpson County went into possession of the property here involved by virtue of the foreclosure of the Bynum trust deed on December 13, 1940, and Simpson County and its successors in title held the land adverse to all persons, including Ottis Bynum, for more than ten years. Title by adverse possession had ripened in Claude N. Cook before the land was conveyed to appellees on January 15, 1953. See § 711, Miss. Code 1942, Rec.

The mineral deeds to W. L. Wood and W. C. Mangum were of record more than ten years prior to the filing of the suit on October 23, 1957. No claim nor suit was filed to set aside the mineral deeds prior to the instant case. In fact, Claude N. Cook excepted a seven-eights interest in the oil, gas and minerals in the trust deed to the Federal Land Bank dated January 3, 1950.

Pertinent parts of § § 709, 710, Miss. Code 1942, Rec., are as follows:

Section 709. "A person may not make an entry or commence an action to recover land but within ten years next after the time at which the right to make the entry or to bring the action shall have first accrued to some person through whom he claims; or, if the right shall not have accrued to any person through whom he claims, then within ten years next after the time at which the right to make the entry or bring the action shall have first accrued to the person making or bringing the same * * *".

Section 710. "A person claiming land in equity may not bring suit to recover the same but within the period during which, by virtue of the provisions hereinbefore contained, he might have made an entry or brought an action to recover the same, if he had been entitled at law to such estate, interest, or right in or to the same as he shall claim therein in equity; but in every case of a concealed fraud, the right of any person to bring suit in equity for the recovery of land, of which he or any person through whom he claims may have been deprived by such fraud, shall be deemed to have first accrued at and not before the time at which the fraud shall, or, with reasonable diligence might, have been first known or discovered."

There are several cases we believe to be of interest on this point. In the case of Douglas v. Skelly Oil Co., 201 Miss. 23, 28 So. 2d 227 (1946), Hartman Mercantile Company owned the property here in question and gave a deed to the Federal Land Bank of New Orleans. This deed of trust was invalidly foreclosed. The Federal Land Bank bought the property and sold it to one Cecil Linton. A trust deed from Linton to the Federal Land Bank was later foreclosed and the Bank again purchased the land. In 1937, the Federal Land Bank conveyed part of the land in question to Douglas and part to Nordan, reserving one-half interest in the minerals. Douglas and Nordan filed a suit in 1944, alleging that the title acquired by them through the Federal Land Bank was a nullity and that they were not precluded from acquiring the outstanding title from Hartman. This Court held that the title to the property was perfected by adverse possession in the Federal Land Bank prior to the time of the filing of the suit in 1944.

In the case of Carlisle v. Federal Land Bank of New Orleans, 217 Miss. 289, 64 So. 2d 142, the property there in question was owned by Mrs. Anna Carlisle. Her heirs filed a suit seeking to set aside a 1935 fore-

closure by the Federal Land Bank upon the ground that Mrs. Carlisle's name was forged to the deed of trust. The Federal Land Bank had sold the land in question to Lee Chancellor, reserving a one-half interest in the minerals. The Federal Land Bank pleaded that the cause of action of the Carlisle heirs was barred by the statute of limitations, § § 709, 711, 718, Miss. Code 1942, Rec. This Court said: ''The only point which appellants seriously urge with reference to the adverse possessory titles of appellees is based upon a contention that the adverse possession of the lands by Lee Chancellor did not inure to the benefit of his grantor, the Federal Land Bank.'' And the Court also said: ''The general rule is that, where there has been a severance of minerals by an adverse possessor, the continued adverse possession of the surface by the severor or severee inures to the benefit of the severed mineral estate as against the true owner. This is true whether the adverse possessor conveys the surface and reserves the minerals, or keeps the surface and conveys the minerals. A case substantially similar to the present one and holding to this effect is McLendon v. Comer, Tex. Civ. App. 1947, 200 S. W. 2d 427.'' The Carlisle case has been cited with approval in the case of Temples v. First National Bank of Laurel, 239 Miss. 446, 123 So. 2d 852 (1960).

In the case of Gaddis & McLaurin, Inc. v. Nichols, 234 Miss. 155, 105 So. 2d 459, Gaddis & McLaurin purchased lands in question at a trustee's sale which was allegedly invalid. Gaddis & McLaurin amended its complaint, alleging that it had acquired title to the lands in question by virtue of § 718, Code 1942, Rec., and the Court said ''It is not necessary for us to consider here the doctrine of estoppel by deed. We think that J. N. Nichols' heirs were barred of their right to recover the land, or their inherited interest therein, by § 718, Code of 1942 * * *''

We are now therefore of the opinion that the instant cause of action is barred by the foregoing code sections, and the chancery court erroneously cancelled the mineral deed from Ray Dukes to W. L. Wood, and the mineral deeds transferring the mineral estate from W. L. Wood to the appellant herein.

W. C. Mangum filed no pleadings in this case and made no defense, and therefore the decree of the chancery court insofar as the deed from Ray Dukes to W. C. Mangum is concerned will be affirmed. Otherwise, the decree of the chancery court will be reversed and the original bill will be dismissed.

Affirmed as to W. C. Mangum, mineral deed, but reversed as to all other deeds cancelled by the chancery court.

Affirmed in part and reversed in part.

*Lee, P. J., and McElroy, Jones and Brady, JJ.,* concur.