GADDIS & McLAURIN, INC. *v.* NICHOLS, et al.

No. 40837 October 6, 1958 105 So. 2d 459

*Jas. H. Adams,* Raymond; *Vardaman S. Dunn,* Jackson, for appellant.

*Carl E. Guernsey*, Heidelberg, *Woodliff, Castle & Franks,* Jackson, for appellees.

KYLE, J.

This case is before us again on direct appeal by Gaddis & McLaurin, Incorporated, complainant in the court below, and cross-appeal by James W. Nichols and others, defendants in the court below, from a decree of the Chancery Court of the Second Judicial District of Hinds County removing clouds, adjudicating the interests and confirming the title of the respective parties in the 100-acre tract of land described as that part of the SE¼ of Section 3, Township 5, Range 2 West, in the Second Judicial District of Hinds County, which lies south of Baker's Creek, and establishing a right of way easement in favor of Gaddis & McLaurin, Incorporated, over and across an adjoining 19-acre tract of land in the SW¼ of said Section 3 owned by the defendants. This is the third time the case has been before us on appeal. See Nichols v. Gaddis & McLaurin (1954), 222 Miss. 207, 75 So. 2d 625; Nichols v. Gaddis & McLaurin, Inc., (1956), 228 Miss. 1, 87 So. 2d 673. The records before this Court on the two former appeals have been incorporated in and made a part of the record on this appeal.

The questions presented for our decision on this appeal are inseparably connected with the issues which the Court had under consideration on the two former appeals. It is therefore necessary that we state briefly the facts underlying the claims of each of the respective parties, as set forth in the pleadings which the Court had before it on the first appeal, and that we give a brief summary of the new matters set forth in the amended pleadings filed by the respective parties after the rendition of the judgment of this Court on the first appeal.

As stated by this Court on the first appeal, the record shows that the 100-acre tract of land was conveyed by Annie L. McNeill and D. A. McNeill to Jim Nichols, who was also known as "J. N." Nichols, Matt Nichols, M. C. Nichols, Willie Nichols and Lem Nichols by warranty deed dated December 22, 1897. Matt Nichols was the father of the other four above named grantees, and each of the five grantees became vested with an undivided one-fifth interest in the property.

The record shows that Matt Nichols died in 1900, and left surviving him his widow, Abbie Nichols, and eight children, including the four who were named as grantees in the above mentioned deed. M. C. Nichols died in 1910, and left surviving him his widow, "Roberta", who never lived on the Nichols place after her husband's death. Abbie Nichols, Matt Nichols' widow, died in 1912. Lem Nichols left the Nichols place in 1916 and went to the Delta. He remained there until 1927, when he and his wife, Henrietta, returned to the Nichols place to help his brother J. N. with his farm work. Lem died in 1930, and Henrietta went to Louisiana to live with some of her own people. Willie Nichols left the Nichols place in 1916 and went to Jackson. He never lived on the Nichols place thereafter. It thus appears that Jim or "J. N." Nichols was the only one of the five grantees named in the 1897 deed who remained on the land after 1916. The other children of Matt and Abbie, who were not named

as grantees in the deed of 1897, were Charlie, Eugene, Mattie and Ethel. Mattie died in 1915; and Ethel died in 1918. Charlie left the Nichols place with Lem in 1916 and went to the Delta, but returned to the Nichols place with Lem in 1927, and died there in 1946. Eugene went to Greenville in 1916, and died there in 1942.

J. N. Nichols and his family continued to live in the old log house on the 100-acre tract until 1924, when he moved into a house on the above mentioned 19-acre tract of land which fronted on the public road. J. N. Nichols had purchased the 19-acre tract in 1906, taking title thereto in his own name. In 1915 the 100-acre tract of land was assessed to J. N. Nichols for taxes and continued to be so assessed to him through the year 1932. J. N. Nichols borrowed money on the 100-acres and executed mortgage deeds of trust thereon, and appears to have exercised exclusive control over the 100 acres and the 19 acres, treating the same as one farm unit, until his death. J. N. Nichols died in 1930, and left surviving him his widod, Mary Nichols, and eight children, namely: James W. Nichols, Matthew Nichols, Welborn Nichols, K. B. Nichols, Willie B. Robinson, Selman Nichols, and Lillie Nichols Williams.

As stated in the opinion rendered on the first appeal, Gaddis & McLaurin claimed title to the 100-acre tract of land by virtue of the attempted foreclosure of a mortgage deed of trust executed by J. N. Nichols and his wife to H. B. Gillespie, as trustee, on February 3, 1928, to secure the payment of an indebtedness of $1527.77 due and owing to Mrs. Sallie Y. Herring and evidenced by a promissory note of even date therewith, due December 1, 1928, and by virtue of its adverse possession of the land under color of title for a period of 19 years after the date of the foreclosure of the mortgage deed of trust on March 7, 1932. The deed of trust executed by J. N. Nichols and his wife to H. B. Gillespie, as trustee, on February 3, 1928, purported to convey and warrant to

the trustee the entire fee simple title to the land. It was properly signed and acknowledged and was filed for record three days after its execution. It vested in Mrs. Herring power to appoint another trustee in the place of the trustee therein named, if from any cause said trustee should not be present, able and willing to execute the trust. But the power to appoint a substitute trustee was conferred upon Mrs. Herring only, and not upon her legal representatives or assignees, of any subsequent holder of the indebtedness.

The facts relating to the foreclosure of the mortgage deed of trust and Gaddis & McLaurin's purchase of the land at the foreclosure sale, and the facts relating to Gaddis & McLaurin's possession of the land under claim of title during the next succeeding twenty years, as shown by the record, are substantially as follows:

On February 6, 1929, W. Y. Herring and Mrs. Sallie Y. Herring, being indebted to Gaddis & McLaurin, of Bolton, Mississippi, a partnership consisting of J. L. Gaddis and George C. McLaurin in a large sum of money, executed a deed of trust to M. Ney Williams, trustee, to secure said indebtedness. In that deed of trust the grantors conveyed to said trustee several hundred acres of land, and also livestock and other personal property, including the above mentioned note of J. N. Nichols for the sum of $1527.77, payable to Mrs. Herring, and "secured by first deed of trust on 100 acres of land." Default was made in the payment of the indebtedness owing by the Herrings to Gaddis & McLaurin, and the deed of trust executed by them to Gaddis & McLaurin was foreclosed by a trustee's sale of the property on January 28, 1932. Gaddis & McLaurin became the purchasers of the property at the foreclosure sale, and the trustee executed a deed of conveyance of the property to Gaddis & McLaurin, including the J. N. Nichols' note for the sum of $1527.77, "secured by deed of trust on 100 acres of land."

J. N. Nichols having died during the latter part of 1930, and the J. N. Nichols' note being past due and un-

paid, on February 2, 1932, J. L. Gaddis, Sr., and George C. McLaurin executed an instrument of writing for the appointment of M. Ney Williams as substitute trustee in the J. N. Nichols deed of trust in the place of H. B. Gillespie, who had been named as trustee in said deed of trust; and on March 7, 1932, M. Ney Williams, as substitute trustee, sold the 100-acre tract of land at public auction, as provided for in said deed of trust, for the payment of the indebtedness secured thereby, and Gaddis & McLaurin became the purchasers of the land at the foreclosure sale.

James W. Nichols and his mother, Mary Nichols, had continued to live in the two houses on the 19-acre tract and to farm the 100-acre tract after J. N. Nichols' death in 1930, and were living on the 19-acre tract at the time of the foreclosure of the J. N. Nichols' deed of trust. Shortly after the foreclosure sale of the land to Gaddis & McLaurin, J. L. Gaddis, Sr., wrote a letter to James W. Nichols, asking him to come to Bolton to see him. James W. went to Bolton to see Mr. Gaddis, and Mr. Gaddis informed James W. that he had purchased the 100-acre tract of land at the foreclosure sale, and that if James W. wished to continue to farm the land he would have to pay rent therefor to Gaddis & McLaurin. James W. agreed to rent the land from Gaddis & McLaurin, and on January 23, 1933, Gaddis & McLaurin, as lessors, and James W. Nichols, as lessee, executed a formal lease contract for a term of ten years, in which the land was referred to as "being the same land formerly owned by Jim Nichols, Sr." James W. Nichols agreed to pay 3000 pounds of middling lint cotton to Gaddis & McLaurin each year as rent, and James W. Nichols was given the privilege of purchasing the land for the sum of $2,000 at any time during the lease period.

In 1936 a new lease contract was executed which provided for a reduction in the amount of rent which James W. should be required to pay during the next succeeding

five years. In 1937 J. L. Gaddis, Sr., and George C. Mc-Laurin incorporated their business and conveyed the 100 acres of land and other lands then owned by the partnership, to Gaddis & McLaurin, Incorporated. James W. Nichols continued to rent and cultivate the 100-acre tract of land as a tenant of Gaddis & McLaurin and to pay rent therefor each year out of the cotton produced on the land until 1952. During that 19-year period James W. and his wife continued to live in one of the houses on the 19-acre tract. James W.'s mother Mary, and his Uncle Charlie also continued to live on the Nichols place until 1946. Charlie died in January 1946, and Mary left the Nichols place soon thereafter. James W.'s wife knew that he was paying rent over the 19-year period, and James W. testified that his Uncle Charlie and his mother "might have" known that he was renting from Gaddis & McLaurin.

In 1952 James W. and Mr. Gaddis were unable to agree on the rent to be paid for the land for that year, and Gaddis finally told James W. that he might go ahead and work the land and pay as rent therefor a one-fourth part of the crops produced on the land. Gaddis learned, however, during the fall of the year, that James W. had not planted any crop on the 100-acre tract for 1952, and Gaddis & McLaurin contracted to sell the land to W. P. Taylor. James W. went to see Mr. Gaddis about buying the land himself, and Mr. Gaddis told him that he had contracted to sell the land to Mr. Taylor. The 100-acre tract of land had no frontage on the public road. The roadway which had been used to enter the 100-acre tract was a roadway across the 19 acres. When James W. learned that Gaddis had contracted to sell the 100 acres to Taylor, James W. forbade Gaddis or Taylor's employees from using the roadway to get to the 100 acres. Gaddis & McLaurin then filed suit in the chancery court seeking an injunction to restrain the defendant from interfering with their right of ingress and egress over

and across the 19-acre tract, and to enjoin the defendant from placing his cattle on the 100-acre tract.

The original bill of complaint was filed on June 17, 1953, against James W. Nichols as defendant. The defendant filed his answer on June 24, 1953, and incorporated in his answer a cross bill. The defendant denied in his answer that the heirs of J. N. Nichols, deceased, were the sole owners of the 100-acre tract of land at the time of the foreclosure of the above mentioned mortgage deed of trust on March 7, 1932, and the defendant denied that Gaddis & McLaurin had acquired title to the 100-acre tract of land by virtue of the alleged foreclosure of the mortgage deed of trust. The defendant averred that the 100-acre tract of land was owned by Willie Nichols, the heirs of Lem Nichols, deceased, the heirs of M. C. Nichols, deceased, and the heirs of J. N. Nichols, deceased; and the defendant averred that he had obtained a quitclaim deed from his Uncle Willie Nichols, and Selman E. Nichols, Willie B. Robinson, and Lillie Williams, three of the heirs of J. N. Nichols, deceased, and Maggie Course, Callie Wattey, Robert Ford, Mattie Ford Course and Tony Ford, heirs of M. C. Nichols' widow, Roberta Nichols, who had inherited M. C. Nichols' interest in the land. A copy of the quitclaim deed which was dated March 5, 1953, was attached to the defendant's answer. The defendant also averred in his answer and cross bill that he and Henrietta Nichols, the surviving widow of Lem Nichols, deceased, Lou Toy McGowan, who was the only heir of Ethel Nichols, deceased, Mary N. Nichols, Curtis Nichols, Matthew Nichols, Welborn Nichols and K. B. Nichols were the legal owners of the land, with interests as stated in the defendant's answer and cross bill. The defendant asked that the complainant be required to account for the value of the cotton withheld by the complainant as rent for the use of the 100-acre tract of land, and that the complainants' claim of title be cancelled, and that the title of the Nichols heirs be confirmed in them by a proper decree of the court.

On August 19, 1953, the complainant by leave of court filed an amended bill of complaint, in which Henrietta Nichols, Lou Toy McGowan, Mary N. Nichols, Curtis Nichols, Matthew Nichols, Welborn Nichols, and K. B. Nichols were named as additional defendants. In its amended bill the complainant alleged in detail the facts concerning the execution of the above mentioned deed of trust by J. N. Nichols and his wife, Mary E. Nichols, to Mrs. Sallie Y. Herring on February 3, 1928, for the purpose of securing the above mentioned note for the sum of $1527.77 owing by them to Mrs. Herring, and the facts concerning the transfer of the note and the security therefor to Gaddis & McLaurin, and the foreclosure of the mortgage deed of trust by M. Ney Williams, substitute trustee, on March 7, 1932, and the purchase of the land by Gaddis & McLaurin at the foreclosure sale. The complainant further alleged that immediately after the foreclosure sale, J. L. Gaddis, acting for himself and George C. McLaurin, went upon the land and advised James W. Nichols that they were the owners of the land and that he would have to pay rent or get off the property; that James W. Nichols thereafter executed a lease contract and agreed to pay rent for the use of the land, and continued to cultivate the land as Gaddis & McLaurin's tenant, and to pay rent therefor, for a period of 18 years, and that the complainant's claim of title to the 100 acres of land had never been questioned by any of the defendants until the present controversy arose. The complainant alleged that the defendants and each of them had notice and knowledge of the complainant's claim of title and ownership of the land and had acquiesced in said claim, and had never asserted any right, title or interest in said land to the complainant's knowledge prior to the year 1953, and that the defendants were precluded from asserting any calim to the land by virtue of limitations, laches and estoppel. The complainant asked that its title to the 100-acre tract be confirmed, and that its right of access to the 100 acres over and across

the above mentioned adjoining 19-acre tract be establish-
ed by a proper decree of the court. The complainant also
filed an answer to the cross bill which had been filed by
James W. Nichols.

The cause was heard by the chancellor upon the plead-
ings and proof, and at the conclusion of the hearing the
court found that the foreclosure sale of March 7, 1932,
and the deed to Gaddis & McLaurin were invalid, be-
cause of the lack of authority of Gaddis & McLaurin to
appoint a substitute trustee. But the court held that the
complainant Gaddis & McLaurin had acquired title to
the 100-acre tract of land by adverse possession against
all the tenants in common, and that the complainant had
also acquired an easement of access to the 100-acre tract
over and across the adjoining 19-acre tract by prescrip-
tion; and a final decree was entered adjudging that the
complainant Gaddis & McLaurin, Incorporated, was the
owner of the 100-acre tract and an easement of access to
the 100-acre tract over and across the 19 acres; and the
claim of the defendants were cancelled. From that de-
cree the defendants prosecuted an appeal to this Court.
See Nichols v. Gaddis & McLaurin, Inc., (1955), 222 Miss.
207, 75 So. 2d 625.

The main question presented for our decision on that
appeal was, whether the complainant's proof was suf-
ficient to establish a legal ouster or disseizin of the co-
tenants out of possession, in view of the fact that Gaddis
& McLaurin's possession during the 19-year period after
the mortgage foreclosure was possession through an at-
torning tenant who was the defendants' cotenant at the
time of the mortgage foreclosure.

The facts developed during the first trial were sum-
marized in the opinion rendered by this Court on that
appeal, and it is not necessary that we restate those facts
in this opinion. This Court after a careful consideration
of the testimony held that the chancellor was warranted
in finding that James W. Nichols and his mother, Mary
Nichols, Lou Toy McGowan, and Charlie Nichols knew

of Gaddis & McLaurin's adverse claim of possession of the 100-acre tract of land, and that Gaddis & McLaurin had ousted them and owned title to their inherited interests in the 100-acre tract of land by adverse possession.

This Court held, however, that the proof was insufficient to show an ouster of the remaining cotenants; and the Court in its opinion said: "In order to establish ouster of cotenants by a tenant in common in possession, the cotenants out of possession must have notice of his adverse claim either 'from actual knowledge or as is sometimes vaguely expressed, by acts equivalent thereto,' as by conduct so unequivocal that knowledge on the part of the cotenant out of possession must be necessarily presumed. Hurst v. J. M. Griffin & Sons, Inc., 209 Miss. 311, 46 So. 2d 440, 47 So. 2d 811 (1950). The Hurst case further holds: 'The testimony of such knowledge by the other tenants in common must be clear and convincing. Fox v. Wilkins, 201 Miss. 78, 28 So. 2d 577. It is not enough that the possession to convey title should be apparently adverse but must be such with actual notice to the cotenants or shown by such acts of repudiation of their claim as are equivalent to actual notice to them.' "

This Court held that the proof was insufficient to show that J. N. Nichols, who was a cotenant in possession of the land until his death in 1930, had acquired title to the land by adverse possession before his death. In discussing that point, the Court said: "There was no proof whatever that the other cotenants, most of whom lived in other states during that period of adverse possession claimed by appellee, had any actual knowledge that appellee was claiming to own the land and was possessing it adversely through a tenant, their cotenants, James W. Nichols." And this Court held that the recording of the substitute trustee's foreclosure deed to Gaddis & McLaurin in 1952 was not sufficient within itself to give notice of the purchaser's adverse claim to the cotenants of J. N. Nichols who were out of possession; and the

Court overruled Peeples v. Boykin, 132 Miss. 359, 96 So. 177.

In view of its own findings, as stated above, this Court held that the trial court erred in its finding of an ouster of the tenants in common other than James W. Nichols, Mary Nichols, Charlie Nichols and Lou Toy McGowan; and this Court held that the inherited interests of the appellants, Henrietta Nichols, and Curtis, Matthew, Welborn and K. B. Nichols were vested in them and not in Gaddis & McLaurin, and that the interests purchased by James W. Nichols in a deed dated March 5, 1953, from Willie Nichols and eight other cotenants were not subject to Gaddis & McLaurin's claim, and were owned by James W. Nichols, who at the time he purchased said interests was not a tenant of Gaddis & McLaurin, And finally, in its opinion, the Court said: ''In view of the numerous fractional interests of the parties and of the nature of the case, this cause is reversed and remanded for further proceedings in the chancery court in accordance with this opinion.''

After the filing of the mandate of this Court in the court below, the complainant, Gaddis & McLaurin, Incorporated, filed motions in that court for leave to file a second amendment to its bill of complaint and for leave to file an amendment to its answer to the cross bill theretofore filed by James W. Nichols as cross-complainant. The chancellor sustained the complainant's motion for leave to amend.

In its second amended complaint, the complainant reaffirmed the allegations of its first amended complaint and alleged in addition thereto the following: That J. N. Nichols and his wife, on February 3, 1928, were in fact and in equity the fee simple owners of the 100-acre tract of land embraced in the mortgage deed of trust executed by them on that date to Mrs. Sallie Y. Herring; that J. N. Nichols and his wife had acquired title to said land and ownership thereof by adverse possession for a period of more than ten years, and by the consent and

acquiescenc of all others who otherwise might have had an interest in said land, and by estoppel, laches, gift, grant and unrecorded conveyance from the remaining parties who were grantees in the deed dated December 22, 1897; that after default had been made in the payment of the indebtedness secured by the above mentioned deed of trust Gaddis & McLaurin, having become mortgagee by assignment, had undertaken to foreclose the deed of trust and went into possession of said land on March 7, 1932, and continued in possession by tenant thereafter uninterruptedly for a period of approximately 20 years; and that title to said land had matured in Gaddis & McLaurin by virtue of Section 718, Miss. Code of 1942. The complainant further alleged that, if the complainant should be mistaken as to that, then the said J. N. Nichols was the record owner of at least 651/2835 interest in said tract of land; and that his wife and his eight children, who were his only heirs, were in privity with him by descent and were bound by the deed of trust executed by him and his wife on February 3, 1928, and that the complainant had acquired title to said interest by virtue of Section 718, Code of 1942. The complainant also alleged that the title acquired by James W. Nichols under the quitclaim deed which he had received from some of the heirs since 1952 inured to the benefit of the complainant by virtue of the doctrine of after-acquired title, and that James W. Nichols was estopped by his own previous conduct to deny that his father owned the land covered by the mortgage.

From the orders allowing the above mentioned amendments the chancellor granted an interlocutory appeal to this Court, and on May 7, 1956, this Court affirmed the action of the chancellor in allowing the amendments, and in its opinion said: ''In the absence of Peeples v. Boykin the complainant would have been required to prove actual notice to the defendants, and we think that since the appellee tried the case primarily in reliance upon the established law of this state for nearly 32 years, it is

entitled on remand to fully develop whatever all the facts may show as to whether or not the defendants had actual notice, or the equivalent thereof." Nichols v. Gaddis & McLaurin, Inc., (1956), 228 Miss. 1, 87 So. 2d 673.

After the affirmance by this Court of the order of the lower court allowing the above mentioned amendments, the defendants filed an answer to the second amended bill of complaint; and as new matter of defense, the defendants in their answer specifically denied that the complainant had acquired title to the 100 acres of land by adverse possession, for the reason that Charlie Nichols, who owned an undivided interest in the land, resided upon the property in controversy from 1929 to 1945, and continued to exercise possession and control over the property until his death in 1946, and that Charlie Nichols was mentally incompetent, and being under mental disability, had no notice, either actual or constructive, of the complainant's purported claim of title.

The cause was heard again at the February 1957 term of the court, upon the amended pleadings, the evidence submitted by the respective parties during the first trial, and additional evidence offered on behalf of the respective parties under the amended pleadings.

The facts relating to J. N. Nichols' possession and exclusive control of the land under an apparent claim of ownership prior to his death, and the facts from which notice or actual knowledge on the part of the cotenants out of possession, of Gaddis & McLaurin's claim of title, might be presumed, were more fully developed on the second trial than on the first trial.

The complainant offered in evidence on the second trial deed records which showed that on January 16, 1913, J. N. Nichols and his wife executed a mortgage deed of trust on the 100-acre tract of land to Sallie Y. Herring to secure a note for $1864.01, of even date therewith, "being for the purchase money of the lands hereinafter described" due on November 1, 1913; and that on October 7,

1919, J. N. Nichols and his wife executed a mortgage deed of trust on the 100-acre tract of land to Mrs. Sallie Y. Herring to secure a note for $1190.93 of even date therewith, "being for the purchase money of the land hereinafter described," due November 1, 1920; and that on April 6, 1926, and on March 16, 1927, J. N. Nichols and his wife executed other mortgage deeds of trust on the 100 acres of land to Mrs. Sallie Y. Herring. In each of the above mentioned instruments the grantors undertook to convey to the trustee therein named the entire fee simple title to the 100 acres of land, with a covenant of general warranty of title. On May 5, 1930, J. N. Nichols and his wife executed an oil and gas lease on the 100 acre tract of land and the 19-acre tract of land to F. N. Sivley with covenants of general warranty of title to both tracts of land.

James W. Nichols, being called to testify as an adverse witness by the complainant, testified that he was three years of age when his grandfather, Matt Nichols, died in 1900; that Matt Nichols was not living on the 100-acre tract of land at the time of his death, but was living on another farm not far away, which was owned at the time of the trial by a Mr. Hightman; and that Matt's widow, Abbie, died in 1912, "up there on what we call the Sivley Place." James W. did not know whether she lived on the 100 acres or not. James W. testified that M. C. Nichols, who was one of the grantees in the deed of 1897, died in 1910 "up there toward McRaven," where his wife's people lived, three or four miles from the 100-acre tract; and that M. C. left surviving him a widow, "Roberta", who was his only heir. Roberta died in 1953. She was living "up toward Jackson" when she died. She had never lived on the Nichols place after M. C.'s death, but had visited the J. N. Nichols family on the Nichols place. None of her people had ever farmed any part of the Nichols land. Roberta left surviving her, as her only heirs, her brothers and sisters, Tony Ford, Mattie Ford Course, Robert Ford, Callie Wattey, Maggie Course and

Rachael Sutton. James W. stated that he knew Roberta's brothers and sisters, and had obtained quitclaim deeds from all of them. Tony Ford lived ''up there about Clinton.'' Mattie Ford Course lived about three or four miles from Raymond. Tony had visited on the Nichols place, and James W. had seen him occasionally. Maggie Course had visited with James W.'s family sometime during the last four or five years. Robert Ford and Callie Wattey lived in Jackson, and James W. saw them once in a while. Both of them had visited on the Nichols place. James W. stated that he did not tell any of them that he was paying rent to Gaddis & McLaurin. None of them had ever asked for any part of the profits or crops that were grown on the land.

James W. testified that Mattie Nichols was living on the 19-acre tract, which was owned by J. N. Nichols, at the time of her death in 1915. Mattie left as her only heirs her brothers and sisters, Eugene, Willie, Ethel, Charlie, Lem and Jim. Ethel Nichols died in the old log house on the 100-acre tract in 1918, leaving as her only heir a daughter, Lou Toy McGowan. Lem and Charlie left the Nichols place in 1916 or 1917 and went to the Delta, and Lou Toy went with them. Lem married Henrietta in 1924. Lem and Henrietta, and Charlie and Lou Toy, came back to the Nichols place in 1927, when they had high water in the Delta, and stayed there until Lem died in 1930. Charlie remained on the Nichols place after Lem's death and died there in 1946.

James W. testified that Eugene Nichols left the Nichols place in 1916 or 1917 and went to the Delta. He came back to the Nichols place for occasional visits after that with members of the Nichols family, but he never came back after 1930. He was living at Greenville when he died in 1942; and he left no wife or children surviving him. James W. testified that Willie Nichols, the last of Matt's children, died in 1953, after the first trial of this law suit. Willie was living with his children in Jackson at the time of his death. He had lived on the Nichols

place at one time, but James W. could not say when that was. James W. did not know whether Willie left the Nichols place before 1916 or not; but when he left, he went to Jackson. He later went to Kentucky and stayed there a while. After Willie came back to Jackson to live James W. went to see him a time or two, and Willie made occasional visits to the Nichols place up until the time of his death. When he made such visits, he would spend the night at James W.'s house. James W. stated that he and Willie were pretty close, but when asked whether Willie knew that he was paying rent to Gaddis & Mc-Laurin, James W.'s answer was, "I didn't tell him." The record shows that Willie was living at the time of the first trial, but did not testify during the trial.

James W. testified that his father, J. N. Nichols, or "Jim" Nichols, died sometime during the latter part of 1930, and that he left surviving him his widow, Mary Nichols and eight children. The places of residence of the eight children at the time of the trial were as follows: Willie Robinson and Lillie Williams were living in Jackson, Mississippi; Curtis Nichols was living in Detroit, Michigan; K. B. and Welborn were living in Chicago; and Selman was living in Saginaw, Michigan. James W. testified that Lou Toy McGowan was living in Chicago, and that none of the above named parties who were living out of the state visited in Mississippi very often. James W. had obtained quitclaim deeds from Willie Robinson, Lillie Williams, Selman Nichols, Curtis Nichols and Matthew Nichols.

Henrietta Nichols was also called to testify as an adverse witness for the complainant. She testified that she and Lem came back to the Nichols place in 1927, "because Lem's brother wanted him to come home and help him out." They moved into a little house on the 19-acre tract and made a crop on the Nichols place in 1928, and Lou Toy and Charlie helped them. They worked the same land in 1929 and 1930. Lem died in 1930 about the time the crop was planted. Charlie lived in the house

with Lem and Henrietta after they returned to the Nichols place; but Charlie later went back to the old log house on the 100-acre tract. Henrietta stated that Lem did not have a team of his own, and he had to use his brother's team to carry the cotton to the gin. She did not know what arrangement Lem had with J. N. about working the land. She just knew that they came there to work. The books of account of Gaddis & McLaurin, which were introduced in evidence by the complainant on the second trial, showed that one half of the proceeds of Lem's cotton was credited to J. N. Nichols' account, thereby indicating that Lem and Henrietta farmed as share tenants of J. N. Nichols.

Henrietta testified that she went to Louisiana about two weeks before Christmas in 1930, and did not visit back in Mississippi after that. She just wrote back to see how the others were. She and Mary would write to one another; but the first time she came back to Mississippi was when she came back to the first trial of this case. Henrietta stated that she knew nothing about Gaddis & McLaurin claiming an interest in the land. She admitted that she had signed some papers and that James W. had paid her $200 in money since the rendition of the decision of this Court on the first appeal. James W. also testified that Henrietta did not visit the Nichols place after she went to Louisiana. But Louis Nichols, James W.'s wife, testified that Henrietta came back to the Nichols place on occasional visits after she went to Louisiana, about Christmas time or at the beginning of the New Year; that such visits were continued up until the time Mary left the Nichols place in 1946; that Henrietta would stay with Mary when she came back, and Louis would visit with her; and that Henrietta came back one time after Mary's death. On this disputed question of fact the chancellor accepted the testimony of Louis, James W.'s wife.

Several witnesses, offered on behalf of the complainant, testified during the second trial that the 100-acre

tract of land had been known for many years as the "Jim Nichols land", and that according to the general reputation in the community Mr. Gaddis or Gaddis & McLaurin had owned the land during the last 15 or 20 years. One of the defendants' witnesses, Reverend John White, testified that, when he was a boy he would often fish in a place down there called "Jim Nick's bottom." White said, " I know the land that we always called the 'Jim Nichols land' ". Thomas Whitfield, the office manager of the A. S. C. Committee of Hinds County, testified that the Agricultural Stabilization and Conservation Service records in his office in Raymond for the year 1950 showed that J. L. Gaddis, Jr., was listed as the owner of the Jim Nichols place, and James Nichols as the farm operator. The chancellor, in his opinion at the conclusion of the second hearing, made an express finding that the land had acquired a fixed and definite reputation in the community as being the land of Gaddis & McLaurin.

At the conclusion of the hearing on the second amended complaint, the chancellor found that the complainant had met the burden of proof laid down by this Court in the opinion rendered on the first appeal. The chancellor found that the evidence offered on behalf of the complainant was sufficient to show that Willie B. Robinson, Lillie Nichols Williams, Tony Ford, Mattie Ford Course, Robert Ford, Callie Wattey, Maggie Course, Rachael Sutton, Henrietta Nichols and Willie Nichols had actual notice or the equivalent thereof that the complainant, Gaddis & McLaurin, Inc., was claiming title to the 100-acre tract of land in question for a period of more than 20 years; and the chancellor found that the right of all of the above named parties were barred by the ten-year statute of limitation at the time of the filing of the original bill of complaint in this cause. The chancellor found that the inherited interests of Mary N. Nichols, James W. Nichols, Lou Toy McGowan and Charlie Nichols which aggregated 354⅔/2835 interest, had been vested in the complainant, Gaddis & McLaurin, Inc., as held by this Court

on the first appeal. The chancellor found that the interest of Willie Nichols, which was a 693/2835 interest, had been vested in Gaddis & McLaurin, Incorporated; that the inherited interest of Henrietta Nichols, the wife of Lem Nichols, deceased, which was a 651/2835 interest, had been vested in Gaddis & McLaurin, Incorporated; that the inherited interest of the heirs of "Roberta" or "Susan Doe" Nichols, the deceased wife of M. C. Nichols, namely, Tony Ford, Mattie Ford Course, Robert Ford, Callie Wattey, Maggie Course and Rachael Sutton, which amounted to a total of 630/2835 interest, had been vested in Gaddis & McLaurin, Incorporated; and that the inherited interest of Willie B. Robinson, which was a 72⅓/2835 interest, and the inherited interest of Lillie Nichols Williams, which was a 72⅓/2835 interest, had been vested in Gaddis & McLaurin, Incorporated.

The chancellor found that the proof failed to show that Curtis Nichols, Matthew Nichols, Selman Nichols, Welborn Nichols, and K. B. Nichols, children and heirs at law of J. N. Nichols, deceased, had knowledge or the equivalent thereof that Gaddis & McLaurin was claiming title to the land; that Curtis Nichols, Matthew Nichols and Selman Nichols had quitclaimed their interests to James W. Nichols, their brother; and that Welborn Nichols and K. B. Nichols still owned their inherited interests. The chancellor found that while the complainant had asserted title as against the above mentioned heirs of J. N. Nichols, deceased, under Section 718, Miss. Code of 1942, and under the doctrine of estoppel by deed, equitable estoppel and laches, and as to some under the doctrine of after-acquired title, these issues had apparently been ruled against the complainant by the Supreme Court upon the first appeal.

The chancellor therefore adjudicated and decreed that Gaddis & McLaurin, Incorporated, was the owner of a 2473⅓/2835 interest in the 100-acre tract of land; that James W. Nichols was the owner of 217/2835 interest; and that Welborn Nichols and K. B. Nichols were the

owners each of a 72⅓/2835 interest in the land. The chancellor also found that Gaddis & McLaurin, Incorporated, was entitled as a matter of right to a right of way easement, as presently laid out and existing, so as to furnish reasonable ingress and egress to the above described 100 acres of land, over and across the adjoining 19-acre tract which was still owned by the heirs of J. N. Nichols, deceased. The relief prayed for in the bill of complaint as amended was granted, and the cross bill was dismissed with prejudice, save and except as to the title and interest of Curtis, Matthew, Selman, Welborn and K. B. Nichols, and their assigns, as stated above, and the cost of court adjudged against James W. Nichols.

The attorneys for the appellant Gaddis & McLaurin, Incorporated, on their direct appeal assign and argue only one point as ground for reversal of the decree of the lower court, and that point is, that the court erred in rejecting the appellants claim that the appellant had acquired title to the inherited interests of Curtis Nichols, Matthew Nichols, Selman Nichols, Welborn Nichols and K. B. Nichols, and in confirming title in James W. Nichols to the 217/2835 interest in the 100 acres of land claimed by James W. Nichols under the quitclaim deeds which he had obtained from Curtis Nichols, Matthew Nichols, and Selman Nichols, and in confirming title in Welborn Nichols and K. B. Nichols to the two 72⅓/2835 interests claimed by them as heirs of J. N. Nichols, deceased.

The appellant's attorneys do not argue that these heirs of J. N. Nichols, Sr., had actual knowledge or the equivalent thereof, of Gaddis & McLaurin's adverse possession of the land. The appellant's attorneys argue that these heirs, who claim under and not independently of J. N. Nichols, deceased, are in privity with J. N. Nichols, deceased, and that their claims were barred under the doctrine of estoppel by deed, by equitable estoppel and laches, and by statutory limitation under Sec. 718, Code of 1942. It is argued that no one has disputed the valid-

ity of the deed of trust executed by J. N. Nichols, Sr., and his wife, on February 3, 1928, in which they conveyed and warranted the title to the 100-acre tract of land to the trustee therein named as security for the indebtedness due and owing by them to Mrs. Sallie Y. Herring; and that on the death of J. N. Nichols, Sr., in 1930, his heirs succeeded to his interest in the land and became in effect the mortgagors and inherited the equity of redemption; that there was no redemption of the mortgage, with the result that Gaddis & McLaurin, assignees of the mortgage indebtedness, went into possession of the land under the void foreclosure sale and retained possession through their tenant and collected the rents thereafter for a period of 19 years; and that J. N. Nichols' heirs, who now claim through him, are privies in blood and privies in estate, and are bound by the recitals, including the warranty of title, contained in the deed of trust executed by J. N. Nichols and his wife. And the appellant's attorneys cite in support of their contention on this point the cases of Robins v. McMillan (1853), 26 Miss. 434; Meyers v. American Oil Co. (1941), 192 Miss. 180, 5 So. 2d 218; Cummings v. Midstates Oil Corporation (1942), 193 Miss. 675, 9 So. 2d 648; and Lee v. Magnolia Bank (1950), 209 Miss. 804, 48 So. 2d 515. It is also argued that the heirs of J. N. Nichols, Sr., are barred of their right to recover their inherited interest in the land by Section 718, Code of 1942.

The appellees' attorneys in answer to the argument made on behalf of the appellant, say that neither the doctrine of estoppel by deed nor Section 718, Code of 1942, is applicable to the facts in this case, for the reason that only the note secured by the above mentioned deed of trust was actually assigned to Gaddis & McLaurin, that the deed of trust was merely transferred along with the note, and that since Gaddis & McLaurin failed to acquire title to the deed of trust by a formal assignment thereof they are not in a position to assert any rights based on estoppel which might have accrued to them if

they had received a legal assignment thereof from Mrs. Herring. The appellees' attorneys also say that the appellant failed to establish its title to the inherited interest of the J. N. Nichols heirs by adverse possession under Section 718, Code of 1942, for the reason that the proof shows that Gaddis & McLaurin never went into possession of the land under the above mentioned deed of trust, but merely attempted to use James W. Nichols, a cotenant, as an attorning tenant and as a symbol of their purported possession.

It is not necessary for us to consider here the doctrine of estoppel by deed. We think that J. N. Nichols' heirs were barred of their right to recover the land, or their inherited interest therein, by Section 718, Code of 7942, which provides as follows:

"When a mortgagee, after condition broken, shall obtain the actual possession or receipt of the profits or rent of land embraced in his mortgage, the mortgagor, or any person claiming through him, may not bring a suit to redeem the mortgage but within ten years next after the time at which the mortgagee obtained such possession or receipt, unless in the meantime an acknowledgment of the title of the mortgagor, or of his right of redemption, shall have been given in writing, signed by the mortgagee, or the person claiming through him; * * *."

According to the uncontradicted testimony, J. L. Gaddis, Sr., shortly after the attempted foreclosure of the mortgage, notified James W. Nichols, who had continued to live in one of the houses on the 19-acre tract and to farm the 100-acre tract after J. N. Nichols' death, that Gaddis & McLaurin had purchased the 100-acre tract of land at the foreclosure sale, and that if James W. wished to continue to farm the land he would have to pay rent therefor to Gaddis & McLaurin. James W. agreed to rent the land and to pay rent therefor, and James W. continued to rent the land and pay rent to Gaddis & McLaurin for a period of 19 years. It is not claimed that

Gaddis & McLaurin ever recognized or acknowledged the title of the heirs, or their right of redemption, after the foreclosure sale of March 7, 1932. By the terms of the above mentioned statute J. N. Nichols' heirs were required to bring suit to redeem the mortgage, or to recover the land, within ten years next after the time at which Gaddis & McLaurin obtained possession of the land or receipt of the rents, or their claims would be barred. No such suit was brought within the ten-year period.

In the case of Garrett v. Ellis, 98 Miss. 1, 52 So. 451, the Court had under consideration Section 3092, Code of 1906, which has been brought forward without change as Section 718, Code of 1942, and in its opinion, the Court said: "This section contains no saving clause as to minors or other persons whomsoever, and when once it is shown that the morgagee, after condition broken and without fraud, actually obtains possession of the land, or receipt of the profits or rent of land embraced in his mortgage for the period prescribed by statute, his title is complete. The statute above quoted is explicit and positive, and gives the mortgagee title when he has obtained actual possession, or when he has been in receipt of the rents and profits of the land for more than ten years. In short, actual possession is not necessary in order to perfect the title; but even if there has been no actual possession, but there has been a receipt of rents and profits for the period of limitation, the title is complete."

In Scottish American Mortgage Company, Ltd., v. Butler, 99 Miss. 56, 54 So. 666, the Court had under consideration the same statute, Sec. 3092, Code of 1906; and in that case the Court held that a nonresident alien mortgagee obtaining possession through tenants though under an invalid sale, and holding such possession and receiving the rents and profits more than ten years adversely under claim of title, secured a perfect title as against the mortgagors. In Beard Bros. Co. v. Daughdrill, 102 Miss. 480, 59 So. 808, the Court had under con-

sideration the same statute, and in its opinion in that case, the Court quoted with approval the language used by Chief Justice Mayes in Garrett v. Ellis, supra, and again held that when once it is shown that the mortgagee, after condition broken and without fraud, actually obtains possession of the land, or receipt of the profits or rents of the land, embraced in his mortgage for the period prescribed by the statute, his title is complete.

It is argued by the appellees' attorneys, however, that the question of statutory estoppel under Section 718, Code of 1942, was decided adversely to Gaddis & McLaurin on the first appeal; and, as we have already stated, the chancellor so held. But we think the chancellor erred in his holding on that point. The complainant did not assert title as against the heirs of J. N. Nichols, deceased, under Section 718 in its first amended bill of complaint, and that issue was not before the Court when the case was decided by us on the first appeal. It is true that the question of statutory estoppel under Section 718 was discussed in the brief filed by Gaddis & McLaurin on the suggestion of error after the opinion was rendered by this Court on the first appeal; but the question was not considered by us at that time, for the reason that it had not been raised in the pleadings filed in the lower court nor argued in the briefs which this Court had before it when the opinion was rendered on November 15, 1954. The complainant had a right to plead and rely upon Section 718, as well as Section 711, Code of 1942, in support of its claim of title. See Gulfport Farm & Pasture Co. v. Hancock Bank (1957), 232 Miss. 289, 98 So. 2d 862. And when this Court overruled Peeples v. Boykin, supra, and held on the first appeal that the mere recording alone of a fee simple deed by a tenant in common does not as a matter of law impart notice to other cotenants of an adverse claim to the land by the tenant in common, and that such recording alone is not effectual to start the running of the statute of limitations, and reversed and remanded the case "for

further proceedings in the chancery court in accordance with this opinion,'' the complainant had a right to apply for and obtain leave to amend its pleadings so as to allege title against the heirs of the mortgagor under Section 718. Nichols v. Gaddis & McLaurin, Inc., (1956), 228 Miss. 1, 87 So. 2d 673.

We think that under the authorities cited above the inherited interests of all of the heirs of J. N. Nichols, deceased, in the 100 acres of land in controversy had been vested in Gaddis & McLaurin, Incorporated, by virtue of Section 718, Code of 1942, and that the chancellor erred in his finding that the inherited interests of Selman Nichols, Matthew Nichols and Curtis Nichols were vested in James W. Nichols by virtue of the quitclaim deeds executed by them to James W. Nichols after this controversy arose, and in his finding that Welborn Nichols and K. B. Nichols were still the owners of their inherited interests in the land. The decree of the lower court will therefore be reversed in so far as it confirms title in James W. Nichols to a 217/2835 interest in the 100 acres of land under the quitclaim deeds from Curtis Nichols, Matthew Nichols and Selman Nichols, and in so far as it confirms title in Welborn Nichols and K. B. Nichols to a 72⅓/2835 interest each in the 100 acres of land; and title to all of said interests will be vested in Gaddis & McLaurin.

The first point assigned and argued by the appellees' attorneys as ground for reversal on their cross-appeal is, that the opinion of this Court rendered on the first appeal is res judicata as to all issues brought before the trial after remand by Gaddis & McLaurin, Incorporated, and that the lower court erred in not entering a decree in accordance with that opinion. It is argued that this Court held in that opinion that the possession of Gaddis & McLaurin was not sufficient, as to those cotenants who were not shown to have had actual notice or the equivalent thereof, to confer title on Gaddis & McLaurin; and that the reopening of the case after remand for the

hearing of additional evidence on the issue of notice enabled Gaddis & McLaurin to have two trials upon the same bill of complaint.

But we think that contention has been answered in the majority opinion rendered by this Court on the second appeal. In its opinion on that appeal the Court said: "In the absence of Peeples v. Boykin the complainant would have been required to prove actual notice to the defendants, and we think that since the appellee tried the case primarily in reliance upon the established law of this state for nearly 32 years, it is entitled on remand to fully develop whatever all the facts may show as to whether or not the defendants had actual notice, or the equivalent thereof." Nichols v. Gaddis & McLaurin, Inc., (1956), 228 Miss. 1, 87 So. 2d 673.

 ██ The judgment rendered by this Court on the first appeal was res judicata of the case presented on that appeal; and if on the second hearing in the court below the pleadings and proof had presented the same case that was before the court on the former appeal, the judgment of the court should have been in accordance with the directions given it by this Court. But the new matter contained in the amended bill and the additional facts developed by the testimony offered on behalf of the complainant during the second trial in an effort to meet a burden which had been greatly enlarged by the overruling of Peeples v. Boykin were not before the Court when the judgment was rendered on the first appeal. The case presented by the amended pleadings and the additional proof on the second trial was a different case from that which was before us on the former appeal, and the judgment or decree should be made to conform thereto. Wailes v. Johnson and Cooper, 25 Miss. 421; Hanserd v. Gray, 46 Miss. 75; Taylor v. Wright, 54 Miss. 722; Barataria Canning Co. v. Ott, 88 Miss. 771, 41 So. 378; Haines v. Haines, 98 Miss. 830, 54 So. 433; Middleton v. Davis, 105 Miss. 152, 62 So. 2d 164, 166.

■■ It is next argued that the appellant Gaddis & McLaurin did not meet the enlarged burden of proof placed upon it by the majority opinion of this Court on the former appeal, and that the chancellor erred in not entering a decree in accordance with the previous decision of this Court. But we think there was ample proof in the record to support the chancellor's finding that Willie B. Robinson, Lillie Nichols Williams, Tony Ford, Mattie Ford Course, Robert Ford, Callie Wattey, Maggie Course, Rachael Sutton, Henrietta Nichols and Willie Nichols had actual notice or the equivalent thereof that Gaddis & McLaurin were claiming the title to the 100-acre tract of land in question for a period of more than 20 years, far in excess of the period of limitations required to acquire title by adverse possession.

As the chancellor stated in his opinion, it was shown during the second trial that Willie B. Robinson and Lillie Nichols Williams, two of the children of J. N. Nichols, deceased, and Roberta Nichols, surviving widow and sole heir of M. C. Nichols, deceased, and Tony Ford, Mattie Ford Course, Robert Ford and Callie Wattey never lived farther away from the land in question than the City of Jackson, a distance of not more than 20 miles; that Maggie Course never lived more than 3½ miles from the land in question; and that Rachael Sutton lived at Georgetown, only a short distance from the land in question. It was also shown during the second trial that all of these parties, or most of them, visited members of the Nichols family on the premises in question on the 19-acre tract immediately adjacent thereto, where James W. Nichols and his mother and other members of his family resided. James W. testified that Willie visited the Nichols place when he felt like it, and "that went on right up to the time he died." When James W. was asked whether Willie knew that he was paying rent, his answer was, "I didn't tell him." James W. testified that Roberta had also visited him on the Nichols place. James W.'s wife testified that Henrietta visited Mary

and other members of the family from time to time after she went to Louisiana.

There is no direct proof in the record to show that Willie, Henrietta and Roberta had actual knowledge that James W. was renting the land from Gaddis & McLaurin after the foreclosure sale of March 7, 1932. But the undisputed facts lead to the inevitable conclusion that they did know that Gaddis & McLendon was claiming title to the land and that James W. was renting the land from Gaddis & McLaurin during the entire 19-year period. James W.'s wife and Mary knew that James W. was renting the land from Gaddis & McLaurin; and this Court held on the first appeal that Lou Toy and Charlie knew that he was renting the land from Gaddis & McLaurin. Herbert Wilson, whose land joined the 100-acre tract, testified during the first trial that he had heard for years that the 100-acre tract was Mr. Gaddis land, and that "if you ask other Negroes about it, that is what they will tell you." Wilson said that had been the general talk in the community for 15 or 20 years. The chancellor found that the land had acquired a fixed and definite reputation as being the land of Gaddis & McLaurin. The land was assessed for taxes to Gaddis & McLaurin, and Gaddis & McLaurin were paying the taxes each year. The records of the A. S. C. Committee of Hinds County for the year 1950 showed that Gaddis was listed as the owner of the land and James Nichols as the farm operator. There is no proof whatever in the record to show that Willie, Henrietta or Roberta, all of whom were living during the entire 19-year period, ever claimed any interest in the land during that time. Willie was living at the time of the first trial, but did not testify as a witness for the defendants, and none of Roberta's brothers or sisters testified.

As stated by this Court in Wilder v. Currie (1957), 231 Miss. 461, 95 So. 2d 563, it taxes credulity too much to say that under all of these circumstances, J. N. Nichols' heirs, Roberta Nichols and those claiming under

her, Willie Nichols and Henrietta Nichols did not have knowledge that Gaddis & McLaurin was claiming to be the sole owner of the land and was collecting the rents therefrom.

Finally, it is argued that the chancellor erred in his finding that the inherited interest of Charlie Nichols who died in 1946 was vested in Gaddis & McLaurin, Incorporated. It is argued that the possession of Gaddis & McLaurin, after the foreclosure of its mortgage, was not exclusive because of the presence of Charlie Nichols upon the land in controversy, and that notice to him of Gaddis & McLaurin's claim was immaterial for the reason that there was no interruption in his possession and use of the property. It is also argued that even assuming that notice was material and that Charlie had notice, the proof submitted by the Nichols heirs during the second trial showed that Charlie was non compos mentis, and that such insanity tolled the statute.

But we think that it cannot be said that the chancellor erred in his finding that the inherited interest of Charlie Nichols, who died in 1946, was vested in Gaddis & McLaurin, Incorporated. This Court held on the first appeal that the chancellor was justified in concluding that Charlie did not live on the 100 acres but on the 19 acres during the period James W. was renting the 100 acres from Gaddis & McLaurin, and that Charlie in reason must necessarily have known that James W. was renting the 100 acres from Gaddis & McLaurin. After a careful reading of the testimony of the witnesses on the second trial, we see no reason for disturbing that finding on this appeal.

The question as to Charlie being mentally incompetent was raised for the first time in the defendants' answer to the second amended bill of complaint, which was filed after this Court had rendered its decision on the interlocutory appeal. The testimony of the defendants' witnesses on that point consisted of the testimony of James W. and his wife, and the testimony of Henrietta and John

White. James W. testified that Charlie was not a normal person, that he liked to be off to himself, liked to stay by himself; he wanted to do his own cooking, and was an expert in baking potatoes in the fireplace. James W. stated that Charlie could not read or write; he did not like to talk much; he could not go to town and shop for himself, and James W. bought his groceries for him. Charlie could not lay out a plow row, but he could plow and cut wood. He could work four or five acres of land, and Jim's children helped him with his hoeing; but James. W. did not think Charlie was a person of sound mind. Louis Nichols, James W.'s wife, testified that Charlie had a funny way of his own; he sometimes put his pants on hind part before; he did not do very much talking; and he liked to be by himself. Henrietta testified that Charlie did not have sense like other people, and that Lem had to see after him. John White (colored) testified that Charlie had "kind of queer ways." He would never look toward people but would always look out and away. Guion Williams, who was bookkeeper for the old Gaddis & McLaurin partnership and secretary of Gaddis & McLaurin, Incorporated, however, testified that Charlie obtained merchandise and supplies and ran an account at Gaddis & McLaurin's store, and that he, Williams, made settlements with Charlie for cotton produced and sold to Gaddis & McLaurin; and that Charlie appeared to be "about as normal as most of them are, I imagine." Williams stated that he noticed no peculiarities about Charlie's conduct when he transacted business with him, and in his opinion Charlie was competent to attend to business like making settlements with him for his cotton and things of that kind. Charlie's account was carried on the books in his own name; but Mary Nichols' name was written under Charlie's name to indicate that Charlie was farming with Mary; and the proceeds of sales of Charlie's cotton were divided between Mary and Charlie, and credited on their accounts.

We think that it cannot be said that the chancellor was manifestly wrong in his finding that Charlie was mentally competent and had notice of Gaddis & McLaurin's claim of title to the land.

For the reasons stated above the decree of the lower court will be reversed on the appellant's direct appeal, in so far as it undertakes to vest and confirm title in James W. Nichols to a 217/2835 interest in the 100 acres of land in controversy, and in so far as it undertakes to vest and confirm title in Welborn Nichols and K. B. Nichols to a 72⅓/2835 interest each in said land, and judgment will be entered here confirming title to all of said interests in the appellant, Gaddis & McLaurin, Incorporated; and the decree of the lower court will be affirmed on the appellees' cross-appeal.

Reversed on appellant's direct appeal, and affirmed on appellees' cross-appeal, and judgment rendered.

All Justices concur.

Lee, J., concurring:

The result reached in this cause, in my opinion, is right both in law and in equity, and I fully concur therein.

Gaddis & McLaurin, Incorporated and their predecessors in title had claimed the title to the land here involved for more than 20 years. The history thereof has been fully narrated in the majority and previous opinions. The Court is now holding that a number of the appellees by virtue of the acts of ownership of Gaddis & McLaurin, Incorporated, either had actual knowledge or the equivalent thereof, and hence, under Section 711, Code of 1942 Recom., were barred from bringing their suit. As to the other appellees, since Gaddis & McLaurin, Incorporated, a mortgagee after condition broken, obtained the actual possession of the land and received the profits and rent therefrom, it is held that such appellees were required, under Section 718, Code of 1942 Re-

com., to bring their suit within ten years; and having failed to do so, they also are barred.

The acts of possession of Gaddis & McLaurin, Incorporated, whether they are viewed according to Section 711 or 718, supra, were the same. The corporation was a stranger to this title just as was the case in Gardiner v. Hinton, 86 Miss. 604, 38 So. 779, followed by this Court in Peeples v. Boykin, 132 Miss. 359, 96 So. 177. It seems to me that the Court, in this case, is in fact again applying the same principle that was applied in Peeples v. Boykin, supra. If there is a difference, in my humble opinion, it is such only as may be found between tweedle-dee and tweedle-dum; and with great legal compassion, I lament that Peeples v. Boykin, supra, one of the great landmarks, has been uprooted from our jurisprudence.

ETHRIDGE, J., specifically concurring:

The second opinion of the Court in this case, on interlocutory appeal, held that Gaddis & McLaurin, Inc., was entitled to amend its bill of complaint and answer to the cross-bill of Nichols. Nichols v. Gaddis & McLaurin, Inc., 228 Miss. 1, 87 So. 2d 673 (1956). I dissented because I thought, and still think, that the pertinent issues were res judicata and had already been decided on the first appeal. 222 Miss. 207, 75 So. 2d 625 (1954).

Complainants on the first trial had a full hearing on their claims, met the burden of proof as to certain defendants, and failed as to others. This Court expressly so adjudicated in the first decision, and remanded the case on a limited basis, solely to ascertain the fractional interests of the parties. However, on the interlocutory appeal this Court held that the present appellants were entitled to amend in toto their bill of complaint and answer to cross-bill, and to re-try the case on newly developed facts and new issues not raised on the first trial. Although I do not think that decision is consistent with

our concept of res judicata and of finality in judicial decisions, I feel that I am bound by it.

The consequences of ignoring the concepts of res judicata and the law of the case are illustrated by three circumstances manifest in the second trial on the merits:

(1) At the second trial Gaddis & McLaurin, Inc., pleaded for the first time Section 718, Miss. Code 1942. This was an affirmative defense, which they had the burden of invoking. Ordinarily, unless an affirmative defense is pleaded, the party later asserting it is considered to have waived it.

(2) Gaddis & McLaurin, Inc., on the first trial failed to offer any adequate evidence of ouster as to certain parties, although such evidence could have been obtained and presented at the first trial if due diligence had been exercised by them. They obtained and presented such evidence on the second trial.

(3) The Court here again reaffirms its decision that Peeples v. Boykin, 132 Miss. 359, 96 So. 177 (1923) is overruled. The mere recording of a deed to a cotenant is not notice to the other cotenants of the adverse possession of the grantee—cotenant and of ouster of the others. However, for many years prior to 1954 the Court had spelled out the required standard of proof, and indicated that the *Peeples* doctrine was not sound. It was well recognized among members of the bar that counsel could not rely on that decision in trying cotenancy cases. Yet the present appellants did so on the first trial, and failed as to certain parties to meet the standard of proof required by the decisions before first *Nichols*.

So the effect of the decision on interlocutory appeal and of this judgment is to give the present appellants a "second bite at the apple", although a basic principle of our jurisprudence is to grant litigants a full and fair hearing, and then to preclude them from later relitigating issues already presented and decided. It is not sound judicial administration to permit further amendments

on the same issues which have been decided by the Court on a prior appeal, and to allow a litigant, who has not exercised due diligence in the presentation of his case on the first trial, to obtain a new hearing after the case has already been decided.

However, assuming, as the Court held, that appellants had the right to re-try the case and to plead for the first time a statute of limitation, Code Sec. 718, I agree that the controlling opinion rendered this day is correct on the record now presented to us.